UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

   -v-                                   CASE NO: 5:18-CR-0185 (NAM )

KAMAR BOATMAN,
                         Defendant.

_____

# DEFENDANT'S REPLY TO THE GOVERNMENT'S RESPONSE TO THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

DATED: March 6, 2019              Respectfully submitted,

                                    LISA A. PEEBLES
                                    Federal Public Defender

                   By:   Courtenay K. McKeon, Esq.
                         Assistant Federal Public Defender
                         Bar Roll No. 515841
                         Clinton Exchange, 3rd Floor
                         4 Clinton Square
                         Syracuse, New York   13202
                         (315) 701-0080

1

The defense submits this reply in response to the Government Response to Motion to Suppress Evidence (Dkt. No. 58). The defense seeks an order suppressing all evidence discovered during the search and Mr. Boatman's written statement. In the alternative, the defense requests that the Court conduct an evidentiary hearing.

## I.      REPLY TO FACTUAL BACKGROUND

This section of the reply will briefly address items asserted by the government in the "Factual Background" section of the government's brief (Dkt. No. 58 at 2-6).

The government states that "[i]n searching Mr. Boatman's residence, SPD Detectives recovered . . . 34.5 Alprozolam pills contained in a pill bottle containing no label." (Dkt. No. 58 at 3.) The government cites no evidence for that assertion. Indeed, no evidence supports that assertion. The pills were not recovered inside Mr. Boatman's residence. Rather, they were located in Mr. Boatman's vehicle inside a purse. (Dk. No. 55-6 at 45.[1])

The government states that redactions to an SPD evidence report "necessarily included . . . the exact type of drug sold by the defendant as he distributed more than one type of cocaine in the course of these sales to the confidential informant and disclosure of this information could be used by the defendant to identify the informant." (Dkt. No. 58 at 5-6.) This assertion reflects the information that Detective Staub provided in his search warrant affidavit. Detective Staub characterized the first two alleged controlled buys as involving requests for "crack" and the receipt of a "beige chunky substance." (Dkt. No. 55-6 at 10, 11.[2]) He characterized the three other alleged controlled buys as involving requests for "cocaine" and the receipt of a "white powdery substance." *Id*. at 12, 13, 14. In contrast, the laboratory analysis ultimately performed in

---

[1] This page number refers to the page number assigned by ECF rather than to the page number in the original document.

[2] These page numbers refer to the page numbers assigned by ECF rather than to the page numbers in the original document.

this case described **_all_** of the samples as "chunky material" that tested positive as "cocaine." *Id*. at 71. There is no difference at all described between any of the samples, other than their weight and the packaging material. Moreover, the defense notes that this lab analysis was not performed until sometime after December 11, 2018. *Id*. This was many months after the controlled buys, which allegedly occurred between January and May of 2018. The laboratory tested the samples only after the government filed its opposition to the defendant's motion to compel. (Dkt. No. 41.)

## II.     REPLY TO THE GOVERNMENT'S ARGUMENTS REGARDING THE MOTION TO SUPPRESS

This section of the reply will briefly address items asserted by the government in Section III of its brief. (Dkt. No. 58 at 7-22.)

Regarding (1) the nexus between Mr. Boatman's home and the alleged controlled buys; and (2) the issuance of a no-knock warrant, the defense rests on its moving papers.

Regarding Detective Staub's misstatements regarding the existence of bullet holes in Mr. Boatman's home, the defense notes that the government has conceded that "Detective Staub did not personally view the holes himself." (Dkt. No. 58 at 14.) His knowledge of those alleged bullet holes, therefore, came entirely from reports filed by other officers. As noted at length in the defense's moving papers, those other officers stated that "there were two holes on the south side of the house in the siding. At this time those holes in the siding *are not confirmed* confirmed (sic) as bullet holes as this residence *may or may not* have been struck on this incident." Detective Staub's statement in the search warrant application that "this residence has been the target of . . . shots fired which are directly related to Kamar Boatman" was, accordingly, false.

Regarding Detective Staub's assertions regarding the alleged controlled buys, the defense notes that the government correctly identifies the issue as one of credibility. (Dkt. No. 58 at 15.) The defense disagrees, however, that "Detective Staub has documents to support his facts." *Id*.

3

As argued at length in the defense's moving papers, none of the documents produced by the government to the defense or, it would appear, to the court demonstrate that the controlled buys actually occurred. There are no notes from any officers other than Detective Staub.  The government has not even provided the names of other officers who were involved in surveillance of the alleged controlled buys. There are no photographs of buy money. There are no notes or exhibits from the photographic lineup.  An evidentiary hearing is necessary to resolve this issue of credibility.

Finally, the issue of whether Mr. Boatman wrote and signed a statement voluntarily or in response to threats and promises by law enforcement officers is also a question of credibility. An evidentiary hearing is necessary to resolve this issue.

### III.        CONCLUSION

The search warrant affidavit in this case did not provide probable cause for the issuance of a warrant because (1) it did not provide a sufficient nexus between the alleged controlled drug buys from Mr. Boatman and Mr. Boatman's home; (2) it did not provide particularized information justifying the issuance of a no-knock warrant; and (3) it contained materially false statements regarding (a) a shots fired report from Mr. Boatman's neighborhood a month before his arrest and (b) the existence of controlled drug buys. Further, Mr. Boatman's written statement was involuntary because he signed it only after officers threatened his mother and girlfriend with arrest and promised Mr. Boatman leniency. The defense therefore respectfully requests an order suppressing all evidence discovered during the search and suppressing Mr. Boatman's written

statement. In the alternative, the defense requests that the Court conduct an evidentiary hearing.


DATED: March 6, 2019                              LISA A. PEEBLES
                                                 FEDERAL PUBLIC DEFENDER
                                    By:          */s/ Courtenay K. McKeon, Esq.*
                                                 Assistant Federal Public Defender
                                                 Bar Roll No. 515841
                                                 Clinton Exchange, 3rd Floor
                                                 4 Clinton Street
                                                 Syracuse, New York   13202
                                                 (315) 701-0080




To:   Richard Southwick, AUSA (via ECF)
      Kamar Boatman, Oneida County Jail (via mail)

5